## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TOSHA SEATON, individually, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-CV-780-JED-PJC** |
| | ) | |
| **STATE OF OKLAHOMA, ex rel. THE** | ) | |
| **DEPARTMENT OF HUMAN SERVICES,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court is defendant Oklahoma Department of Human Services' Motion to Dismiss (Doc. 46), defendants Ed Lake, Betty Camacho, Melissa Jones, Robert C. Scheer, and Nicole Little's Motion to Dismiss (Doc. 47), and defendants Realation Community Services of Oklahoma, Inc., Mark Jackson, and Almeda Evans' Partial Motion to Dismiss Counts Four, Five, Six, and Eight of Plaintiffs' First Amended Complaint (Doc. 48).   Plaintiffs have opposed each motion.

## Background

Plaintiffs Tosha Seaton and James Seaton filed this lawsuit individually and as parents and next friends of their minor children A.S. and R.S., and the Estate of Christopher Seaton, to recover for damages resulting from the death of their eleven-year-old son, Christopher Seaton. Christopher died on April 7, 2013 after he was struck by three vehicles while attempting to cross Interstate 44 on foot.  (*Id.* at 2, ¶ 3).  Plaintiffs' First Amended Complaint names as defendants the Oklahoma Department of Human Services ("DHS"), individual DHS employees Ed Lake, Betty Camacho, Melissa Jones, Robert C. Scheer, and Nicole Little ("individual DHS defendants"), Realations Commmunity Services of Oklahoma, Inc. ("RCSOK"), individual

RSCOK employees Mark Jackson, Almeda Evans, and John Does 1, 2, and 3 ("individual RSCOK defendants), Gordon David Guthrie,[1] and Patrick Adam Guthrie.  (*Id.* at 3, ¶¶ 7-21).

Christopher, R.S., and A.S. were placed in defendant DHS's custody on May 7, 2009, following reports of sexual abuse by an older sibling.  (*Id.* at 2, ¶ 1; *id.* at 9, ¶¶ 26-27).  At the time of his death, Christopher was under the care of defendant RSCOK, a for-profit group home under contract with DHS, and had been in DHS custody for almost four years.  (*Id.* at 2, ¶ 1). After he was placed in DHS custody, Christopher was diagnosed with posttraumatic stress disorder, depression, oppositional defiant disorder of childhood, and attention deficit hyperactivity disorder, combined type, moderate.  (*Id.*).

From the time Christopher was first placed in DHS custody on May 7, 2009 until his death, he was placed in various facilities and admitted to various programs, such as the Cedar Ridge Hospital Acute Care Program for Children, the Cedar Ridge Residential Treatment Unit, foster care homes, trial reunification plans with his parents and grandparents, INTEGRIS Mental Health Willow View inpatient care, the INTEGRIS Mental Health Star Program, and finally, RSCOK.  During the time Christopher was under DHS custody, he attempted to run away several times, was known to be a flight risk, and was also placed on absent without leave ("AWOL") status.  In fact, as early as May 2009 when Christopher was admitted to the Acute Care Program at Cedar Ridge Hospital, it was reported that he had attempted to run away from a foster home and/or shelter, as well as his school.  (*Id.* at 9, ¶ 30).  On June 19, 2009, while attending a family counseling session, Christopher ran away and crossed four lanes of traffic. (*Id.* at 9, ¶ 34).  An ISP Progress Report dated June 29, 2010 states that Christopher was having "weekly runaway episodes." (*Id.* at 9, ¶ 37).  Christopher was placed on AWOL precautions for

---

[1] Defendant Gordon David Guthrie was dismissed as a defendant on October 14, 2015.  (Doc. 62).

most of July 2010 while at INTEGRIS because he would run from staff.  (*Id.* at 10, ¶ 30).  On January 9, 2011, Christopher attempted to flee a DHS group home three times. (*Id.* at 11, ¶ 45). Christopher was often placed on AWOL risk during the nearly thirteen months he was in the INTEGRIS Mental Star Program. (*Id.* at 12, ¶ 48).

On April 7, 2013, Christopher ran away from the group home with another minor under defendant RSCOK's care.  They were chased by the group home staffer on duty and two group home residents.  Christopher attempted to cross westbound Interstate 44, tripped on a concrete median, and was hit by three vehicles.  He died at the scene.  (*Id.* at 12, ¶ 50).  At the time the lawsuit was filed, A.S. and R.S. were still in DHS custody.  (*Id.* at 13, ¶ 56).  Plaintiffs allege that DHS has "pushed" for termination of James and Tosha Seaton's parental rights following Christopher's death, and also that a DHS employee threatened that their children would remain in DHS custody if they proceeded with this lawsuit.  (*Id.* at 13, ¶¶ 56-57).

Plaintiffs' lawsuit asserts the following causes of action: (1) deliberate indifference of Christopher Seaton's substantive due process rights in violation of the Fourteenth Amendment by the individual DHS and RSCOK defendants under 42 U.S.C. § 1983; (2) negligent hiring, training, and supervision by DHS; (3) DHS and individual DHS defendants' negligent placement of Christopher Seaton in RSCOK; (4) negligent oversight of Christopher Seaton's care and custody by RSCOK and the individual RSCOK defendants; (5) negligent hiring, training, and supervision by defendant RSCOK and the individual RSCOK defendants; (6) RSCOK's breach of its third-party beneficiary contract with DHS; (7) negligent driving by defendants Gordon David Guthrie and Patrick Adam Guthrie; and (8) wrongful death pursuant to Okla. Stat. tit. 12, § 1053, against all defendants.  Lastly, plaintiffs seek a declaratory judgment against DHS and

injunctive relief against all defendants.  (*Id.* at 30, ¶ 146).  Plaintiffs' suit requests compensatory and punitive damages, in addition to attorney's fees under 42 U.S.C. § 1988.  (*Id.* at 31).

## Legal Standard

Each motion argues that dismissal is appropriate pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted).   The *Twombly* pleading standard is applicable to all civil actions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the plaintiff.  *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

## Discussion

### I.    Defendant Oklahoma Department of Human Services' Motion to Dismiss (Doc. 46)

Defendant DHS's Motion argues that the causes of actions relevant to DHS in the First Amended Complaint should be dismissed on three grounds.  First, DHS argues that Eleventh Amendment immunity bars actions against DHS for money damages.  Second, the Oklahoma

Governmental Tort Claims Act, Okla Stat. tit. 51 § 151, *et seq.*, exempts DHS from tort liability to plaintiffs.  Lastly, DHS argues that plaintiffs are not entitled to any declaratory judgment against DHS.  (Doc. 46 at 5).  To be clear, the only counts pertaining to DHS are Count Two (negligent hiring, training, and supervision), Count Three (negligent placement of Christopher Seaton in RSCOK), and Count Eight (wrongful death pursuant to Okla. Stat. tit. 12, § 1053), in addition to plaintiffs' request for declaratory and injunctive relief.

### A.  Eleventh Amendment Immunity

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."  *Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009) (affirming district court's dismissal of plaintiffs' claims against state agency based on Eleventh Amendment immunity). The Tenth Circuit has held that DHS is an arm of the State of Oklahoma entitled to Eleventh Amendment Immunity. *McKinney v. State of Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991).  In their Response, plaintiffs concede that DHS enjoys immunity under the Eleventh Amendment and therefore state they will not pursue any claim of money damages against DHS.  (Doc. 56 at 6).  Given plaintiffs' concession, DHS's Motion is granted on this ground.

### B.  State Tort Claims under the Oklahoma Governmental Tort Claims Act

DHS next argues that it is exempt from liability for plaintiffs' tort causes of action (Counts Two, Three, and Eight) based on four of the exemptions to sovereign immunity under the Oklahoma Governmental Tort Claims Act, Okla Stat. tit. 51 § 151, *et seq.* ("OGTCA"). (Doc. 46 at 10).  Plaintiffs respond that none of the statutory exemptions cited by DHS are applicable to the facts of this case.  (Doc. 56 at 7-10).  In their Reply, DHS argues that given

plaintiffs' concession that the Eleventh Amendment applies to DHS, plaintiffs' tort claims against DHS are barred as a matter of law.  (Doc. 60 at 2-3).  The Court agrees with DHS.

The OGTCA allows plaintiffs to recover against state governmental entities for their negligence. *See Smith v. City of Stillwater*, 328 P.3d 1192, 1198 (Okla. 2015).  Subject to certain enumerated exceptions, the OGTCA adopts the doctrine of sovereign immunity.  Okla. Stat. tit. 51, § 152.1(A)-(B).  The Tenth Circuit has held, however, that "[t]he waiver of immunity in the OGTCA extends only to the State of Oklahoma's immunity in its own courts." *Harris v. Oklahoma Office of Juvenile Affairs* ex rel. *Cent. Oklahoma Juvenile Ctr.*, 519 F. App'x 978, 980 (10th Cir. 2013) (unpublished).  Moreover, the OCTGA explicitly states that "it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution."  Okla. Stat. tit. 51, § 152.1(B).  It follows then, that even though a state actor may not be entitled to sovereign immunity, the Eleventh Amendment can bar the same claim against a state actor in federal court. *Lujan v. Regents of Univ. of California*, 69 F.3d 1511, 1522 (10th Cir. 1995) ("The fact that the Regents may not be immune from suit in state court under principles of sovereign immunity does not mean that federal courts can exercise jurisdiction over [plaintiffs'] state-law claims consistent with the Eleventh Amendment.").

As discussed above, there is no dispute that DHS is entitled to Eleventh Amendment immunity. The Court thus concludes that plaintiffs' state tort claims against DHS are barred as a matter of law, regardless of the OGTCA.  *See Harris*, 519 F. App'x at 980 (10th Cir. 2013) (unpublished) (rejecting appellant's argument under OGTCA and affirming district court's dismissal of a state law negligence claim against the Oklahoma Office of Juvenile Affairs based on Eleventh Amendment immunity). Accordingly, Count Two is dismissed in its entirety, and Counts Three and Eight are dismissed as to DHS.

### C.  Request for Declaratory Judgment

DHS's last argument in favor of dismissal is that plaintiffs have not alleged sufficient facts to support their claim for declaratory relief.  (Doc. 46 at 13-14).  Plaintiffs' First Amended Complaint requests "a declaratory judgment that declares that DHS has failed to allocate necessary and adequate funding such that DHS, through its employees, was not able to meet regulatory and legislative requirements regarding appropriate supervision, protection and oversight of minors like Christopher, A.S. and R.S," pursuant to the Oklahoma Declaratory Judgment Act, Okla. Stat tit. 12, § 1651 *et seq.*, and the federal Declaratory Judgment Act, 28 U.S.C. § 2201. (Doc. 41 at 30, ¶ 146).

In support of its argument, DHS points to plaintiffs' failure to allege the existence of a justiciable controversy between plaintiffs and DHS.  (Doc. 46 at 15).  In response, plaintiffs contend that because A.S. and R.S., who are parties to this lawsuit through their parents, remain in DHS custody and thus there exists a legally protectable interest in a controversy ripe for judicial determination.  (Doc. 56 at 11).

The Oklahoma Declaratory Judgment Act allows a district court to, "in cases of actual controversy, determine rights, status, or other legal relations . . . provided however, that a court may refuse to make such determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding."  Okla. Stat. tit. 12, § 1651. The Oklahoma Supreme Court has held that declaratory relief depends "upon the existence of a justiciable controversy," which "refers to a lively case or controversy between antagonistic demands." *House of Realty, Inc. v. City of Midwest City*, 109 P.3d 314, 318 (Okla. 2004).  The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its

jurisdiction . . . , any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

Construing the facts in a light most favorable to plaintiffs, the facts as alleged in plaintiffs' First Amended Complaint are sufficient to support their right to relief beyond mere speculation. Specifically, plaintiffs claim for declaratory relief alleges: "The failure of DHS to hire sufficient and adequately trained personnel to supervise and protect vulnerable children, and to establish and implement the policies and procedures, denies children like Christopher, A.S., and R.S. services and protections afforded by Oklahoma statutes and the Constitution of the State of Oklahoma." (Doc. 41 at 30, ¶ 146). The First Amended Complaint also alleges that DHS, through its employees, has suggested that plaintiffs' parental rights may be terminated and/or that A.S. and R.S. may never be returned to them. (*Id.* at 13, ¶¶ 56-57). The facts as alleged are sufficient to allege the presence of a live controversy between plaintiffs and DHS. Further, because A.S. and R.S. are currently in DHS custody and there is no guarantee they may be reunified with their parents, there is a legally protectable interest related to DHS's allocation of funding, as A.S. and R.S. would likely benefit from additional resources.

In *Briggs v. Oklahoma ex rel. Oklahoma Dep't of Human Servs.*, 472 F. Supp. 2d 1304, 1311 (W.D. Okla. 2007), *aff'd sub nom. Briggs v. Johnson*, 274 F. App'x 730 (10th Cir. 2008), a father filed a lawsuit against DHS and several of its employees individually, alleging that their failure to protect and prevent physical abuse of his daughter resulted in her death. The plaintiff's complaint requested a declaration that DHS "failed to allocate necessary and adequate funding to its agencies and subsidiaries such that DHS, through its employees, was not able to meet regulatory and legislative requirements regarding appropriate supervision, protection and oversight of minors like Kelsey . . . who are in DHS custody." *Id.* (quotations and citations

omitted).   The court granted DHS's motion to dismiss plaintiff's claim for declaratory relief on the grounds that there was no "sufficiently concrete or real" threat to the father, individually or as the representative of his daughter's estate, and thus there was no live case or controversy. *Id.* at 1312.   Another district court in this Circuit reached the same conclusion based on almost identical facts. *See Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 2007 WL 756694 (E.D. Okla. Mar. 7, 2007) (granting dismissal of plaintiffs' claim for declaratory judgment on reconsideration), *rev'd on other grounds in Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008).   Contrary to the plaintiffs in *Briggs* and *Robbins* however, the plaintiffs in this case have filed suit on behalf of their *living* children who are currently in DHS custody, and thus can demonstrate that they may benefit from increased funding to DHS, particularly in light of the fact that their children may remain in DHS custody if their parental rights are terminated.   The Court concludes that plaintiffs' allegations are sufficient at this stage.

DHS' Motion is therefore **granted** with respect to Counts Two, Three, and Eight, but **denied** as to plaintiffs' request for declaratory judgment.

## II.   Defendants Ed Lake, Betty Camacho, Melissa Jones, Robert C. Scheer, and Nicole Little's Motion to Dismiss (Doc. 47)

Individual DHS defendants Ed Lake, Betty Camacho, Melissa Jones, Robert C. Scheer, and Nicole Little request the Court to dismiss the counts in plaintiffs' First Amended Complaint related to them because (1) plaintiffs have failed to state a claim as to any constitutional violations under 42 U.S.C. § 1983 or shown that they are entitled to relief for their tort causes of action, and (2) even assuming plaintiffs have sufficiently alleged a § 1983 violation, defendants are entitled to qualified immunity from personal liability.  (Doc. 47 at 1).  The counts pertaining to the individual DHS defendants are: Count One (violation of substantive due process pursuant

9

to 42 U.S.C. § 1983), Count Three (common law negligence), and Count Eight (wrongful death under Okla. Stat. tit. 12, § 1053).

Plaintiffs' First Amended Complaint provides that DHS defendant Ed Lake was the Director of DHS at the time of Christopher's death. He is sued in his official and individual capacities. (Doc. 41 at 3, ¶ 8). DHS defendants Betty Camacho, Melissa Jones, Robert C. Scheer, and Nicole Little were caseworkers employed by DHS and assigned to Christopher at the time of his death. They are sued in their individual capacities. (Doc. 41 at 4, ¶¶ 9-12).

**A.  Section 1983 Claim**

Count One of plaintiffs' First Amended Complaint alleges that the individual DHS defendants are liable under 42 U.S.C. § 1983 for violating Christopher Seaton's Fourteenth Amendment due process rights. 42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of his federal rights. Generally, state actors are only liable for their own acts, and not for acts of private violence. *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). The two exceptions to this rule are the special relationship doctrine and state-created danger theory. *Id.* "The special relationship doctrine applies 'when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual.'" *Id.* (quoting *J.W. v. Utah*, 647 F.3d 1006, 1011 (10th Cir. 2011)). The state-created danger theory applies when the state "creates or increases a harm of private violence to an individual." *Id.* Plaintiffs have asserted liability under both the special relationship doctrine and the state-created danger theory.

The Tenth Circuit has recognized the difficulties faced by a section 1983 plaintiff at the motion to dismiss stage. "[C]omplaints in § 1983 cases against individual government actors

pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants.  *Robbins*, 519 F.3d at 1249.  "Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."  *Id.* at 1250 (italics in original).  A complaint that uses the collective term "defendants," or lists the defendants individually but fails to distinguish what acts are attributable to whom, makes it impossible for an individual defendant to ascertain what particular unconstitutional acts are alleged against him. *Id.* In such cases, it is appropriate to dismiss a plaintiff's claims.  *Id.* at 1252-53.  A district court has "no duty 'to conjure up unpleaded facts that might turn a frivolous claim . . . into a substantial one.'" *Id.* at 1252 (quoting *O'Brien v. DeGrazier*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)).

The individual DHS defendants' Motion argues that the First Amended Complaint fails to state a section 1983 claim under either the special relationship or state-created danger doctrine because the allegations are broad, general, and conclusory.  (Doc.47 at 7).  The Motion also challenges plaintiffs' supervisory liability claim against defendant Ed Lake for the same reasons. (*Id.* at 9).  For the reasons discussed, the Court finds that plaintiffs have failed to state a claim under each doctrine, and therefore the claim must be dismissed as to the individual DHS defendants.

### i.      Special relationship doctrine

Plaintiffs' First Amended Complaint alleges that a special relationship existed between Christopher and the state by virtue of his placement in foster care custody, and as a result, the state "owed him an affirmative duty of protection from harm."  (Doc. 41 at 15, ¶ 67).

The special relationship doctrine applies "when the State takes a person into its custody and holds him there against his will." *DeShaney*, 489 U.S. at 199. In such circumstances, "the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being," and the violation of that duty may form the basis for a substantive due process claim. *Id.* Thus, a claim based upon the special relationship doctrine requires that (1) the defendants must have known of the asserted danger or failed to exercise professional judgment, and (2) the defendants' conduct must have a causal connection to the ultimate injury. *Schwartz*, 702 F.3d at 583. The defendants' conduct "must shock the conscience." *Id.*

In *Yvonne L., By & Through Lewis v. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 890 (10th Cir. 1992), the Tenth Circuit explicitly recognized that foster care custody creates a special relationship. The relationship "triggers a continuing duty which is subsequently violated if a state official 'knew of the asserted danger to [a foster child] or failed to exercise professional judgment with respect thereto, . . . and if an affirmative link to the injuries [the child] suffered can be shown.'" *Schwartz*, 702 F.3d at 580 (quoting *Yvonne L.*, 959 F.2d at 890). The right is not limited to the child's initial placement and extends to the duration of foster care. *Id.* at 581 n.6.

Based on the law cited above, plaintiffs can show the existence of a special relationship. Thus, the Court must assess whether plaintiffs have pled sufficient facts to state a claim that defendants violated Christopher's Fourteenth Amendment rights. Plaintiffs' First Amended Complaint provides:

> In this case, Defendants Ed Lake, Betty Camacho, Melissa Jones, Robert Scheer, [and] Nicole Little . . . had knowledge, based on almost four years of reporting, that Christopher Seaton was likely to avail himself of any opportunity to escape his confinement and that, based on their professional judgment, he should be placed in a facility with a proven track record of protecting residents who posed a flight risk. Christopher Seaton's care and treatment substantially departed from accepted professional judgment,

standards, or practice and involved affirmative acts which constitute an abuse of power and patently shock the conscience."

(Doc. 41 at 16, ¶ 73). Plaintiffs further allege that the facts stated "establish deliberate indifference to Christopher Seaton's health and safety on the part of Defendants Ed Lake, Betty Camacho, Melissa Jones, Robert Scheer, [and] Nicole Little," and demonstrate that defendants deprived Christopher Seaton of his Fourteenth Amendment rights. (*Id.* at 17, ¶¶ 74-75). Contrary to plaintiffs' belief, these factual allegations are insufficient to meet the *Twombly* standard.

First, the factual allegations related to the Individual DHS Defendants are stated in the collective; because there are no facts alleged specifically as to each defendant, defendants are left without notice as to what particular actions formed the grounds for their liability. Second, even viewing the facts most favorably to the plaintiffs, the Court finds that these allegations are insufficient to support plaintiffs' conclusory contention that the individual DHS defendants failed to exercise professional judgment that shocks the conscience. Plaintiffs have merely recited the legal elements required for the claim, which is insufficient under *Twombly*. Accordingly, plaintiffs have failed to state a plausible substantive due process claim against the individual DHS defendants based on the special relationship doctrine. *See Bishop v. Oklahoma ex rel. Dep't of Human Servs.*, 2013 WL 6192516, at *2-3 (W.D. Okla. Nov. 26, 2013) (dismissing section 1983 claim based on special relationship doctrine where allegations against DHS employees were not sufficiently specific and were conclusory). In light of plaintiffs' failure to state a § 1983 claim, the Court need not inquire as to whether qualified immunity applies.

ii.     **State-created danger theory**

A prima facie case under the state-created danger theory requires a plaintiff to show that (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience. *Robbins*, 519 F.3d at 1249.   "'The key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid.'" *Armijo, By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir. 1998) (quoting *Johnson v. Dallas Ind. Sch. Dist.,* 38 F.3d 198, 201 (5th Cir. 1994) (internal citations and quotations omitted)). "'Affirmative conduct for purposes of § 1983 should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration.'" *Briggs v. Johnson,* 274 F. App'x 730, 735 (10th Cir. 2008) (unpublished) (quoting *Ruiz v. McDonnell,* 299 F.3d 1173, 1183 (10th Cir. 2002)). Plaintiffs again fail to meet the dismissal standard.

Plaintiffs' First Amended Complaint alleges:

> With the authority and resources of the DHS, Director Ed Lake and employees Betty Camacho, Melissa Jones, Robert Scheer, and Nicole Little knew or should have known of over 150 phone calls reporting runaway juveniles from the Relations Group Home facility and that the Relations Group Home did not have policies and procedures in place to adequately protect Christopher Seaton given his known propensity to run away and escape various premises. Nonetheless, the Individual DHS Defendants, in an egregious lack of professional judgment, and in act that shocks the

14

> conscience, placed Christopher Seaton at Relations Group Home
> thereby creating or increasing the danger to this vulnerable child.

(Doc. 41 at 17, ¶ 77).  The Complaint alleges the "individual DHS Defendants," or "Defendants Ed Lake, Betty Camacho, Melissa Jones, Robert Scheer, [and] Nicole Little" put Christopher at an increased risk of harm by placing him at RSCOK, which was "not equipped to respond to his particular needs and proclivities," and in doing so acted recklessly and in conscious disregard of the increased risk.  (Doc. 41 at 17, ¶ 78).  The Complaint includes other general allegations against "the Individual DHS Defendants," such as their indifference to the "known fact" that Christopher was a runaway risk yet they "affirmatively placed Christopher Seaton in Relations Group Home, located next to a busy interstate highway, thereby placing him in a place of increasing danger where he could and did run onto that highway and met a violent and preventable death." (Doc. 41 at 18, ¶ 79).  In sum, plaintiffs claim that the facts "establish that state actors – Defendants Ed Lake, Betty Camacho, Melissa Jones, Robert Scheer, [and] Nicole Little . . .  not only increased the danger to Christopher Seaton but affirmatively placed him in greater danger."  (Doc. 41 at 18, ¶ 81).

However, plaintiffs have once again failed to meet the minimal notice pleading requirements.  Specifically, the collective nature of the assertions against the "individual DHS defendants," or "Defendants Ed Lake, Betty Camacho, Melissa Jones, Robert Scheer, Nicole Little" do not place the individual defendants on notice of the particular conduct that allegedly violated Christopher's Fourteenth Amendment rights.   *See Robbins*, 519 F.3d at 1250.  This is particularly problematic in light of the fact that plaintiffs make no distinction between the allegedly unconstitutional conduct by defendant Ed Lake, the DHS Director and Betty Camacho, Melissa Jones, Robert Scheer, and Nicole Little, the individual DHS employees acting as Christopher Seaton's caseworkers.  *Id.*  ("Presumably, the allegedly tortious acts committed by

[the DHS director] . . . and the individual social workers  . . . are entirely different in character and therefore are mistakenly grouped in a single allegation.").   Because the plaintiffs failed to individualize each defendant's alleged unconstitutional conduct, the First Amended Complaint does not adequately provide notice to the individual DHS defendants.  As a result, the Court is not required to conduct further analysis as to plausibility or qualified immunity.   *VanZandt v. Oklahoma Dep't of Human Servs.*, 276 F. App'x 843, 849 (10th Cir. 2008) (unpublished) (dismissing section 1983 claim and declining to conduct further inquiry after plaintiffs' complaint failed to provide defendants adequate notice).  Accordingly, plaintiffs may not defeat dismissal based on this theory.

### iii.    Supervisory liability

Plaintiffs have also alleged liability on defendant Ed Lake, the director of DHS, as a supervisor of individual DHS employees Betty Camacho, Melissa Jones, Robert Scheer, and Nicole Little.  (Doc. 41 at 19, ¶¶ 84-85).  However, plaintiffs' failure to state a due process claim as to the individual DHS employees bars a supervisory liability claim premised upon the same conduct.  *See Robbins*, 519 F.3d at 1252 ("Because we find that the plaintiffs failed to state a claim for violation of [the child's] due process rights on which relief can be granted, we likewise find that the plaintiffs have failed to adequately plead supervisory liability.").

The Court therefore finds that Count One as to the individual DHS defendants must be dismissed.

### B.  State Tort Claims under the OGTCA

The individual DHS employees collectively assert that they are immune from liability for plaintiffs' claims of negligence and wrongful death (Counts Three and Eight) under the OGTCA because they were acting within the scope of their employment.  (Doc. 47 at 10).  Plaintiffs argue

that they have adequately pled facts to show that the individual DHS employees are not entitled to immunity because their conduct was willful and wanton.  (Doc. 58 at 20-21).

Section 152.1(A) of the OGTCA expressly immunizes from tort liability all state employees acting within the scope of their employment.  Okla. Stat. tit. 51, § 152.1(A). For purposes of the OGTCA, "scope of employment" is defined as "performance by an employee acting *in good faith* within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . but shall not include corruption or fraud."  Okla. Stat. tit. 51, § 152(12) (italics added).  An employee's willful and wanton conduct places such conduct outside the scope of employment and will not be afforded OGTCA individual immunity. *Hull v. Wellston Indep. Sch. Dist. I 004*, 46 P.3d 180, 184 (Okla. 2002); *see also Houston v. Reich*, 932 F.2d 883, 890 (10th Cir. 1991) (holding that police officers were not entitled to immunity under OGTCA because the jury determined they acted willfully, wantonly and in reckless disregard of plaintiff's constitutional rights).

Plaintiffs' allegations under both Counts Three and Eight of the First Amended Complaint fail to sufficiently identify conduct by the individual DHS employees that a jury could find constitute willful and wanton conduct.  As to defendant Lake, plaintiffs allege that he acted "arbitrarily and in bad faith and in reckless disregard of the best interest of Christopher Seaton, failed to explore whether Relations [sic] Group Home could and did meet Christopher's needs and whether or not any other facilities at his disposal were better equipped to protect him from the proven impulse to run away."  (Doc. 41 at 3, ¶ 8).  Plaintiffs allege that defendants Camacho and Jones were "deliberately indifferent in the discharge of [their] duties as a case worker and/or supervisor entrusted with the custody, supervision and care of Christopher Seaton," and also "violated Christopher Seaton's due process rights by failing to exercise professional judgment in

17

the placement and supervision of Christopher at Relations [sic] Group Home." (Doc. 41 at 3, ¶¶ 9-10).  Finally, plaintiffs' First Amended Complaint states that defendants Scheer and Little were "deliberately indifferent in the discharge of [their] duties as a case worker and/or supervisor entrusted with the custody, supervision and care of Christopher Seaton." (Doc. 41 at 5, ¶¶ 11-12).

Plaintiffs allege that the individual DHS defendants were negligent in their oversight of Christopher's care and custody, specifically that they knowingly placed Christopher in a home that "had a history of failing children like [him]," entered into a contract with RSCOK, failed to adopt and/or implement policies or procedures to monitor and protect Christopher and children like him, failed to adopt and/or implement policies or procedures to review and evaluate the safety of homes, and failed to reasonably and properly investigate allegations of abuse and neglect of Christopher Seaton and other children while in the Realations Group Home.  (Doc. 41 at 22, ¶¶ 98-105).  The same facts support plaintiffs' claim for wrongful death.

First, these general allegations fail to identify actions or omissions specific to each of the individual DHS defendants; this is insufficient to rise above a speculative level.   Second, the facts as alleged are not enough to overcome the "willful and wanton conduct" requirement.  As noted by another district court, "acts performed with reckless disregard do not necessarily equate to bad faith and fall outside the scope of employment.  Such determination should rather be made on a case-by-case basis." *Higginbottom v. Mid-Del Sch. Dist.*, 2016 WL 951691, at *4 (W.D. Okla. Mar. 9, 2016) (citing *Gowens v. Barstow*, 364 P.3d 644, 652 (Okla. 2015)).  While defendants' conduct may demonstrate reckless disregard, the Court cannot find that any of defendant's actions were not in good faith and thus outside their scope of employment.  As a

result, Counts Three and Eight must also be dismissed.  The individual DHS defendants' Motion is thus granted in its entirety.

Plaintiffs have requested leave to amend their First Amended Complaint pursuant to Fed. R. Civ. P. 15 in the event the Court finds that dismissal of the claims against the individual DHS defendants to be appropriate.  (Doc. 58 at 15, 21).   "'Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (quoting 6 C. Wright & A. Miller, Federal Practice & Procedure § 1483, at 587 (2d ed.1990)).  Thus, a district court's denial of a motion to amend must be justified by reasons such as futility of amendment or undue delay.  *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 559 (10th Cir. 1997).   At this stage of the proceedings, the Court cannot determine that it would be futile to grant plaintiffs leave to amend, nor that amendment would cause undue delay given the absence of a scheduling order.  Accordingly, plaintiffs are granted leave to file a second amended complaint to cure the deficiencies noted above.

### III.   Defendants Realation Community Services of Oklahoma, Inc., Mark Jackson, and Almeda Evans' Partial Motion to Dismiss Counts Four, Five, Six, and Eight of Plaintiffs' First Amended Complaint (Doc. 48).

Defendant RSCOK and the individual RSCOK defendants' Motion argues that dismissal of plaintiffs' state tort claims in Count Four (common law negligence), Count Five (common law negligent hiring, training, and supervision), and Count Eight (wrongful death under Okla. Stat. tit. 12, § 1053), is proper because the OGTCA bars these claims against defendants.[2]   The Motion further asserts that Count Six, plaintiffs' breach of third-party beneficiary contract claim, should be dismissed because plaintiffs lack standing.  (Doc. 48 at 2-4).

---

[2] Defendants state that they do not seek dismissal of Count One at this time.  (Doc. 48 at 3).

### A.  State Tort Claims under the OGTCA

First, defendants argue that the claims are barred because plaintiffs failed to comply with the notice requirements of the OGTCA.  Second, defendants claim that even if notice had been proper, the individual RSCOK defendants are immune from tort liability because they are employees of a state agency.  (Doc. 48 at 6-7).  Plaintiffs respond that defendants have not established they are entitled to notice, nor are they employees of a state agency. (Doc. 57 at 8-9).

### i.      Notice requirement

The OGTCA requires a claimant to provide notice of a loss or injury to the state or political subdivision within one year after the loss or injury.  Okla. Stat. tit. 51, § 156(B).  For wrongful death claims, notice must be provided within one year after the death.  *Id.*, § 156(F).  A lawsuit cannot be initiated unless (1) valid notice has been provided and (2) the action is commenced within 180 days after the claim has been denied.  *Id.*, § 157(B).

Defendants contend that the OGTCA applies to them because RSCOK is an "agency" of the state under Okla. Stat., tit. 51, § 152(2), which is defined as "any board, commission, committee, department or other instrumentality or entity designated to act in behalf of the state or a political subdivision."  (Doc. 48 at 5).   In support of their argument, defendants reference plaintiffs' First Amended Complaint, which alleges that the RSCOK defendants "were acting under color of state law," and "became an agency or instrumentality of the state."   (*Id.*).  Plaintiffs do not dispute that no notice was provided to the RSCOK defendants.[3]  However, they argue that defendants have provided no basis, statutory or otherwise, to support their claim that

---

[3] Plaintiffs timely provided notice to the other defendants in this case.  Plaintiffs' First Amended Complaint attaches as exhibits its "Notice of Tort Claim against the State of Oklahoma, Oklahoma Department of Human Services, Tulsa County, and Human Services Center-Canadian County," which was served on the Department of Risk Management on April 4, 2014, and the Attorney General's Office on April 7, 2014.  (Doc. 41, Exhs. 1, 2).  The claim was denied on July 3, 2014.  (Id. at 8, ¶ 24).  Plaintiffs filed this lawsuit on December 30, 2014.

RSCOK is an agency of the state of Oklahoma for the purposes of the OGTCA and therefore notice is not required.  (Doc. 57 at 8).

The Court agrees with plaintiffs.  There are insufficient facts before the Court at this time to support a finding that RSCOK is a state agency for purposes of the OGTCA.  The only facts presented in plaintiffs' First Amended Complaint regarding the relationship between RSCOK and the state of Oklahoma is the description that RSCOK is "a for-profit group home under contract with the Oklahoma Department of Human Services . . . to house children in DHS custody."  (Doc. 41 at 7, ¶ 16).  But the existence of a contract with a state entity is insufficient to impose state agency status on a private entity.  *See Briggs*, 472 F. Supp. 2d at 1299 (private youth services organization that contracted with DHS was not a state agency under OGTCA).

In *Briggs*, the district court cited *Sullins v. American Medical Response of Oklahoma, Inc.*, 23 P.3d 259 (Okla. 2001), where the Oklahoma Supreme Court was presented with the question of whether a private entity, the American Medical Response of Oklahoma, was considered an "agency" under the OGTCA by virtue of its contract with a state actor.  The Court held that it was not:

> A private entity such as AMR is not an "entity designated to act in behalf of the state or a political subdivision" merely because it contracts with a public trust to provide services which the public trust is authorized to provide. Notwithstanding the fact that it may be providing a public service, a private entity such as AMR does not act in the administration of government. It is not charged by law with the responsibility of conducting any public business. It is organized by private citizens pursuant to general corporate laws. It is not controlled by or answerable to the public, but is governed by its own board of directors. Its employees are not governmental employees. Except as it has voluntarily obligated itself by contract, it is not required to provide services or remain in existence. In summary, it possesses all the attributes of a private business enterprise, a non-governmental entity.

*Id.* at 264.   The same rationale applies to RSCOK, a for-profit entity whose sole connection to the state of Oklahoma is via a contract.   Like the district court in *Briggs*, the Court also cannot conclude that RSCOK is a state agency.   *See Briggs*, 472 F. Supp. 2d at 1299.   Notice was therefore not required and defendants' argument is without merit.

### ii.      State employees

The same reasoning defeats defendants' argument that the individual RSCOK defendants are immune from tort liability by virtue of their status as "state employees."   Because the Court determined that RSCOK is not a state agency, RSCOK employees cannot be state employees.[4] Accordingly, dismissal of Counts Four, Five, Six, and Eight based on the OGTCA is improper.

### B.  Negligent Hiring, Training, and Supervision Claim

Next, the defendants argue that dismissal of Count Five, plaintiffs' negligent hiring, training, and supervision claim is appropriate because plaintiffs have alleged respondeat superior liability.   (Doc. 48 at 8).   In their Response, plaintiffs concede that dismissal as to defendant Almeda Evans is proper.   However, plaintiffs request the Court to deny dismissal at this time so that plaintiffs have time to conduct additional discovery in order to better "understand [defendant] Mark Jackson's full role."   (Doc. 57 at 13).

A negligent hiring, training, and supervision claim allows an employer to be held liable for its employees tortious conduct.    Under Oklahoma law, "where the employer stipulates that liability, if any, would be under the *respondeat superior* doctrine . . . any other theory for imposing liability on the employer [is] unnecessary and superfluous.   *Jordan v. Cates*, 935 P.2d 289, 293 (Okla. 1997).   Defendant's Answer to Count Five of the First Amended Complaint

---

[4] The OGTCA defines "employee" as "any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis."   Okla. Stat. tit. 51, § 152(7).

provides: "Defendants admit that Mark Jackson and/or Almeda Evans were acting within the course and scope of employment and Realation accepts any *respondeat superior* responsibility . . . ." (Doc. 49 at 19, ¶¶ 119-25).  It is clear that plaintiffs' independent claim for negligent hiring, supervision, and retention under Count Five is therefore unnecessary and superfluous.  *See Aldridge v. Indian Elec. Co-op.*, No. 07-CV-633-HDC-PJC, 2008 WL 1777480, at *7–8 (N.D. Okla. Apr. 17, 2008) (granting defendant's motion to dismiss on negligent hiring, supervision, and retention claim because defendant admitted respondeat superior liability).  Moreover, it is unclear what impact, if any, additional discovery may have on plaintiffs' claim.  Defendants' Motion is thus granted as to Count Five, plaintiffs' negligent hiring, training, and supervision claim.

## C.  Breach of Third-Party Beneficiary Contract Claim

Defendants' final contention is that plaintiffs lack standing to bring Count Six, their claim for breach of a third-party beneficiary contract.  This argument relies on the fact that plaintiffs Tosha and James Seaton have not been appointed the personal representative of the Estate of Christopher Seaton and thus have no interest in the outcome of this case.  (Doc. 48 at 11-12).  In response, plaintiffs argue that they have standing on behalf of themselves, their minor children, and Christopher Seaton, and also represent that they are preparing an application to be appointed as the administrators of Christopher Seaton's estate.  (Doc. 57 at 13-14).

Defendants' argument confuses a plaintiff's standing to sue with his capacity to sue.  The Tenth Circuit has stated that the "difference between capacity to sue and standing to sue [is that] [t]he former relates to the right to come into court, while the latter relates to the right to relief." *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1300 (10th Cir. 1980).  Defendant's argument here is more properly assessed as an argument that

23

plaintiffs lack capacity to sue. *Hamilton v. Rogers Cty. Bd. of Cty. Comm'rs*, 2015 WL 1528912, at *3 (N.D. Okla. Apr. 3, 2015) (argument that plaintiff lacked standing because she had not been appointed administrator of estate properly assessed as capacity issue); *Hill v. Martinez*, 87 F. Supp. 2d 1115, 1122 (D. Colo. 2000) ("[W]hether plaintiffs can sue on behalf of an estate is a question of capacity.").

Federal Rule of Civil Procedure 17 governs the determination of a party's capacity to sue, be sued, and its status as the real party in interest. *Esposito v. United States*, 368 F.3d 1271, 1273 (10th Cir. 2004). With respect to individuals not acting in a representative capacity, such as the plaintiffs, Fed. R. Civ. P. 17(b)(3) dictates that the law of the individual's domicile governs when assessing the capacity to be sued. The plaintiffs are residents of Canadian County, Oklahoma, and therefore Oklahoma law applies.[5] (*See* Doc. 41 at 3, ¶ 6).

Defendants properly cite Okla. Stat. tit. 12, § 2017(A), which provides that "[e]very action shall be prosecuted in the name of the real party in interest." The same provision states:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The Court conducted its own search of the Oklahoma state court docket sheets and found a probate action concerning Christopher Seaton, *In the Matter of the Estate of Christpher Seaton, deceased*, No. PB-2017-42. The docket reveals that, at plaintiffs' request, a special administrator was appointed to Christopher's estate on March 3, 2017. (*See* Exh. 1). A motion for joinder or

---

[5] The result would be the same if plaintiffs were acting in any other capacity. *See* Fed. R. Civ. P. 17(b)(3) (the law of the state where the court is located applies for individuals acting in representative capacity).

substitution has not yet been filed in the present case.  Under Oklahoma law, the Court may not dismiss the action without giving plaintiffs reasonable time to join or substitute the real party in interest.  Okla. Stat. tit. 12, § 2017(A); *see also All Comp Const. Co., LLC v. Ford*, 999 P.2d 1122, 1123 (Ok. Ct. Civ. App. 2000) (reversing trial court's dismissal of action without allowing reasonable time for real party in interest to be joined or substituted).  The Court finds that, given the recent appointment of the administrator to Christopher Seaton's estate, reasonable time for substitution or joinder has not passed.  Dismissal of plaintiffs' claim at this time would not comply with the reasonable time requirement under Oklahoma law.   Accordingly, defendants' request as to the breach of third-party contract claim is denied at this time.

Defendant RSCOK and the individual RSCOK defendants' Motion is thus granted as to Count Five and denied as to Counts Four, Six, and Eight.

<u>Conclusion</u>

For the reasons discussed, defendant Oklahoma Department of Human Services' Motion to Dismiss (Doc. 46) is **granted in part** and **denied in part**; defendants Ed Lake, Betty Camacho, Melissa Jones, Robert C. Scheer, and Nicole Little's Motion to Dismiss (Doc. 47) is **granted** with leave to amend; and defendants Realation Community Services of Oklahoma, Inc., Mark Jackson, and Alameda Evans' Partial Motion to Dismiss Counts Four, Five, Six, and Eight of Plaintiffs' First Amended Complaint (Doc. 48) is **granted in part** and **denied in part**.

SO ORDERED this 28th day of March, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

25